IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CR-131-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| BRYAN JACKIE HARPER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress. (DE 83). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Kimberly A. Swank entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 94). Defendant timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

**STATEMENT OF THE CASE**

Indictment filed July 29, 2020, charges defendant first with distribution of a mixture and substance containing a quantity of heroin and fentanyl and a quantity of cocaine and aiding and abetting; and second with possession with intent to distribute forty grams or more of a mixture and substance containing a detectable amount of heroin and fentanyl and a quantity of cocaine. Following several continuances of arraignment, the court granted defendant's pro se motion to appoint new counsel and defendant's current counsel entered an appearance on June 10, 2021.

On October 1, 2021, defendant filed the instant motion to suppress evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. Defendant seeks suppression and exclusion of all evidence obtained or derived from the execution of state court orders for disclosure of cell phone and GPS data and a state court warrant to search defendant's person, vehicles, and residences at 719 Melba Court and 4752 Seahawk Court in Wilmington, North Carolina.

The government responded in opposition, relying on the state orders, search warrant and the affidavits upon which those orders and warrant were based. M&R entered January 25, 2022, and defendant timely objected, relying upon a list of available exhibits in support of his offer of proof.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

On March 2, 2020, North Carolina Superior Court Judge George F. Jones ("Judge Jones") issued an order authorizing use of a pen register and/or trap and trace device for a telephone number believed to be used by Defendant. (Resp. Opp'n, Ex. A [DE #84-1] ("PRTT Order").)[1] Detective B.D. Chisholm of the Wilmington, North Carolina, Police Department applied for this order, which Judge Jones issued pursuant to both federal and state statutory law. (PRTT Order at 6–7, 12 (referencing 18 U.S.C. §§ 2703(d), 3122–3127, and N.C. Gen. Stat. §§ 15A-260 through -264).)

On March 4, 2020, Judge Jones issued an order, upon application from Detective Chisholm, authorizing installation of a global positioning system ("GPS") tracking device on a 2013 Lincoln MKZ automobile believed to have been used by Defendant in connection with drug trafficking. (Resp. Opp'n, Ex. C [DE #84-3] ("Lincoln GPS Order").) Next, on March 9, 2020, again upon application from Detective Chisholm, Judge Jones issued an order authorizing installation of a GPS tracking device on a 2000 Ford F-150 vehicle believed to have been used by Defendant in connection with drug trafficking. (Resp. Opp'n, Ex. B [DE #84-2]

---

[1] The court uses the same shorthand titles for the orders and warrant, as provided in these incorporated facts, such that they are designated as follows: (Resp. Opp'n, Ex. A (DE 84-1) ("PRTT Order"); (Resp. Opp'n, Ex. B (DE 84-2) ("Ford GPS Order"); (Resp. Opp'n, Ex. C (DE 84-3) ("Lincoln GPS Order"); and (Resp. Opp'n, Ex. D (DE 84-4) ("Warrant"). For ease of reference, the court will also refer collectively to the Lincoln and Ford GPS Orders as "the GPS Orders."

("Ford GPS Order").) For ease of use, the undersigned will refer collectively to these as "the GPS Orders."

On March 20, 2020, Detective Chisholm applied for, and Judge Jones issued, a warrant to search the following for evidence of drug trafficking: 719 Melba Court, Apt. I, Wilmington, NC; 4752 Seahawk Square, Apt. B8, Wilmington, NC; the Lincoln and Ford vehicles specified in the GPS Orders; any vehicle located within the curtilage of the Melba Court and Seahawk Square residences or within the dominion and control of persons located within said residences; and any outbuildings associated with said residences. (Resp. Opp'n, Ex. D [DE #84-4] ("Warrant").) The return of service indicates that the warrant was issued around 9:00 a.m. on March 20, 2020, and executed later that morning around 10:44 a.m. (Warrant at 16.)

(M&R (DE 94) at 3-4).

## COURT'S DISCUSSION

A.   Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.   Analysis

   1.   Statutory Violations

Defendant asserts that the orders and warrant do not comply with North Carolina statutory requirements and thus the evidence obtained pursuant to them should be excluded. (See Obj. (DE

3

95) at I(a, d), II(c), and III(a)). As the magistrate judge cogently explained, however, "there is no exclusionary rule generally applicable to statutory violations," and "[f]ederal not state law governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." (M&R (DE 94) at 6 (quoting United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011)). Thus, failure to comply with state procedural laws is not a "plausible basis for suppressing evidence." (Id.). Though defendant more specifically describes in his objections what the alleged statutory violations were, he does not direct the court to any specific error in the magistrate judge's recommendation that, regardless, such objections be dismissed. Thus, upon careful review, and having found no clear error, the court adopts the recommendation of the magistrate judge as its own and rejects defendant's objections asserting violations of North Carolina statutes.[2]

2. Probable Cause

Defendant additionally argues that the orders and search warrant were not supported by probable cause.

The Fourth Amendment to the United States Constitution secures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (quoting California v. Carney, 471 U.S. 386, 390 (1985)). Additionally, to be valid, a search warrant must "contain a particular description of the place to be searched, and the persons or things to be seized" and "be based upon probable

---

[2] Defendant additionally asserts that relevant state statutes establish a lesser standard than that required by the Constitution or otherwise establish different standards and consequently require separate consideration. (See Obj. (DE 95) I(b-c) and II(a)). As noted above, however, federal and not state law governs admissibility of evidence used in federal prosecution, and thus here the relevant standard is found in the Fourth Amendment and related case law. Clenney, 631 F.3d at 667; California v. Greenwood, 486 U.S. 35, 43 (1988) ("We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs.").

4

cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

"The probable cause standard is not defined by bright lines and rigid boundaries." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992). Rather, "the standard allows a magistrate to review the facts and circumstances as a whole and make a commonsense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Indeed, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). This standard "does not demand showing that such a belief be correct or more likely true than false." Id.; see United States v. Blakeney, 949 F.3d 851, 859–61 (4th Cir. 2020) (noting that probable cause is "not a high bar").

When reviewing a magistrate's probable cause determination, "[the court's] inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." Id. In conducting this inquiry, "[the court] must accord great deference to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). Additionally, "the reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Importantly, "reviewing courts must resist the temptation to 'invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236).

Defendant argues the orders and warrant lacked probable cause because: 1) they fail to establish that the confidential informant relied upon was in fact reliable; 2) there was an

5

insufficient nexus between defendant and the item or location to be searched; 3) with regard to the GPS Orders, the information provided by the confidential informant was stale; and 4) with regard to the PRTT Order, there were errors. The court addresses each argument in turn below.

      a.      Credibility of the Confidential Informant

All affidavits in the record rely in part on information provided by a confidential informant, and defendant challenges the confidential informant's credibility on the grounds that the information he provided was inadequately corroborated. With regard to the GPS Orders, defendant additionally asserts that the affidavits provide only a bald assertion that the confidential informant was reliable, and, conversely, that the search warrant affidavit lacks such an assertion.

"[C]orroboration can confirm the reliability of an informant who is known (rather than anonymous) but whose credibility is unknown to the officer." United States v. Gondres-Medrano, 3 F.4th 708, 716 (4th Cir. 2021). "[I]n evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration." Wilhelm, 80 F.3d at 119. Though "[s]ome corroboration is [] required with no track record of reliability . . . . since a known informant exposes himself to possible criminal prosecution or other consequences for giving false information, his reliability is enhanced and less corroboration is required as compared to an anonymous informant." Gondres-Medrano, 3 F.4th at 716. Ultimately, the question is whether the information provided, judged in the totality of the circumstances including an informant's "veracity" or "reliability" and his "basis of knowledge," "suffices for the practical, common-sense judgment called for in making a probable cause determination." Gates, 462 U.S. at 230, 244.

Here, the affidavits do not clearly provide that the confidential informant has a track record of reliability, and thus some corroboration was likely required. (See PRTT Order at 2 (describing

6

the confidential informant as "documented and reliable"); Ford GPS Order at 2 (same); Lincoln GPS Order at 2 (same)). In that regard, each affidavit states that the confidential informant identified defendant in a photo as a person from whom he had purchased heroin "at least 100 times, purchasing a minimum of 10 clips (250 bags of heroin) at a time." (PRTT Order at 2 (advising that defendant required the confidential informant to purchase "20 clips a week minimum" as a prerequisite to doing business); Ford GPS Order at 2 (same); Lincoln GPS Order at 2 (same); Warrant at 6 (same)). The confidential informant advised the affiant that defendant's registered probation address was at "the sea hawk square apartment complex," though he was uncertain "where he laid his head at night." (PRTT Order at 2; Ford GPS Order at 2; Lincoln GPS Order at 2; Warrant at 6). He additionally provided "specific descriptions" of the vehicles operated by defendant, as well as a North Carolina registration tag, which the affiant confirmed was registered to defendant.[3] (PRTT Order at 2; Ford GPS Order at 2; Lincoln GPS Order at 2; Warrant at 6). Officers then attempted a controlled buy, during which defendant repeatedly referenced the quantity of narcotics in his possession.[4] (PRTT Order at 2; Ford GPS Order at 2; Lincoln GPS Order at 2; Warrant at 8).

---

[3] Though defendant challenges the provision of the registration tag, asserting that the affiant's "typed report of his interview [of the confidential informant] does not indicate that [he] provided any registration tag information," the affidavits state that the confidential informant provided the tag a week after the interview. (Obj. (DE 95) at III(g)); see PRTT Order at 2; Ford GPS Order at 2; Lincoln GPS Order at 2; Warrant at 6). Thus, the omission is consistent with the facts provided in the affidavits.

[4] Defendant asserts that the confidential informant's failure to actually procure drugs from defendant "casts substantial doubt on his claims to have bought drugs from defendant previously." (Obj. (DE 95) I(f), and II(i), III(e)). As explained by the magistrate judge:

> "Defendant omits from his argument that during the controlled buy operation he was audio recorded talking about his drug operation. Regardless of whether Defendant provided the CI with drugs on that occasion, that controlled buy operation resulted in evidence that was included in the affidavit and which supported the probable cause finding."

(M&R (DE 94) at 22).

Taken together, particularly where he was known, the confidential informant's information was sufficiently corroborated to establish his reliability. Additionally, later-submitted affidavits offer further corroboration, including that the confidential informant described the second vehicle, for which he did not offer a registration tag, as a green Ford F-150. (Ford GPS Order at 2; Warrant at 7). Defendant had earlier been stopped in a vehicle matching that description, and during a subsequent search officers discovered two cardboard boxes containing "a large quantity of empty, unmarked, and unsealed heroin bindles" as well as "a large amount of US currency." (Ford GPS Order at 2; Warrant at 7). The officers additionally determined that the vehicle was registered to defendant. (Warrant at 7). Finally, officers identified defendant's registered federal probation address as 4752 Seahawk Square, and further investigation revealed that he routinely slept, and thus "laid his head," at 719 Melba Court. (Id. at 6, 7).

In sum, based on the totality of the circumstances, the confidential informant's information permissibly factored into the probable cause determination.

      b.     Nexus

Defendant asserts the affidavits fail to establish a nexus between 1) defendant and the cell phone number listed in the PRTT Order; 2) defendant and the vehicles identified in the GPS Orders, namely a Ford and Lincoln; and 3) defendant's residences at 719 Melba Court and 4752 Seahawk Court and any criminal activity.

"[A]n affidavit should establish a connection between the defendant and the property to be searched and a link between the property and any criminal activity." United States v. Gibson, 708 F.3d 1256, 1278 (11th Cir. 2013) (quotations omitted); see United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993). Here, with regard to the PRTT Order, defendant challenges the former requirement. Defendant asserts that "[n]one of [sic] numbered paragraphs [within the PRTT

8

Order] seeking to establish probable cause makes [sic] any reference to the [d]efendant's use of a cell phone in general or the specific telephone number set forth in the application." (Obj. (DE 95) at I(g)).

As a general matter, modern cell phones are "a pervasive and insistent part of daily life." Riley v. California, 573 U.S. 373, 385 (2014) (providing that "the proverbial visitor from Mars might conclude [cell phones] were an important feature of human anatomy"). They are also a recognized tool of drug-traffickers. See United States v. Gibson, 547 F. App'x 174, 185 n. 1 (4th Cir. 2013) (Davis, J., concurring in part and concurring in the judgment) (recognizing the frequent use of cell phones in the drug trade); United States v. Slater, 971 F.2d 626, 637 (10th Cir. 1992) (explaining that a cellular phone is "a recognized tool of the trade in drug dealing").

With that backdrop, the affidavit in issue provides that the Wilmington Police Department sought to "install and monitor a pen register and/or trap and trace device(s) . . . on the cellular telephone services subscribed to Verizon Wireless and being used by [defendant] who's [sic] assigned telephone number is [redacted]." (PRTT Order at 3 (emphasis added)). As already noted, it additionally provides that the officers had been working with a confidential informant who claimed to have purchased heroin from defendant "at least 100 times." (Id. at 2). Officers were also able to successfully arrange a meeting with defendant during an attempted controlled drug purchase. (Id.).

While the connection between defendant and the cell phone number certainly could have been clearer, as "warrant affidavits are normally drafted by nonlawyers . . . they must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor judged as an entry in an essay contest." United States v. Pulley, 987 F.3d 370, 380 (4th Cir. 2021). So interpreting the affidavit, and based on the totality

9

Case 7:20-cr-00131-FL   Document 101   Filed 04/18/22   Page 9 of 13

of the circumstances including the role cell phones generally play in drug trafficking, the officers' successful arrangement of a meeting with defendant, the realistic means by which officers would have obtained the number (namely, the confidential informant), the affiant's identification of Verizon Wireless specifically as the subscriber and description of the number as assigned to defendant, the magistrate judge could reasonably infer a connection between defendant and the number identified. Notably, defendant provides no law to the contrary.

Defendant similarly asserts that the affidavits underlying the GPS Orders do not establish a sufficient connection between defendant and the vehicles to be monitored. The Lincoln GPS Order affidavit provides both that the confidential informant identified the vehicle as one defendant operated and that, following a search of the registration tag the confidential informant provided, the vehicle came back as registered in defendant's name. (Lincoln GPS Order at 2). As for the Ford affidavit, the confidential informant similarly provided a specific description of the vehicle and defendant had in the year prior been stopped in a vehicle matching the description. (Ford GPS Order at 2). There is, thus, ample evidence in the affidavits to draw a connection between defendant and the vehicles monitored.

Finally, defendant asserts the warrant affidavit fails to establish a nexus between defendant's residences at 719 Melba Court and 4752 Seahawk Court and any criminal activity.

"[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence." United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quotations omitted). Indeed, "probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." Lalor, 996 F.2d at 1582; see United States v. Anderson, 851

F.2d 727, 729 (4th Cir. 1988) ("[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.").

Here, the affidavit offers direct evidence linking defendant's alleged criminal conduct with both residences. In a controlled purchase operation targeting a local drug dealer, GPS tracking revealed defendant leaving from 719 Melba Court and driving to the location of the controlled purchase. (Id. at 9). After defendant arrived, the dealer entered and then exited defendant's car, and subsequently met with the confidential informant with "a large amount of cocaine in his possession that he didn't have prior to meeting with [defendant]." (Id. at 8 (noting that the confidential informant advised officers that "the drug dealer called his 'plug' or 'supplier' to obtain enough cocaine to sell to the confidential informant"). GPS tracking then showed defendant went directly to 4752 Seahawk Drive. (Id. at 9).

The affidavit also offers substantial indirect evidence linking defendant's alleged conduct with the residences. The United States Court of Appeals for the Fourth Circuit has held that "it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key." Grossman, 400 F.3d at 218. Applied here, as already noted, the affidavit underlying the search warrant provides that defendant admitted in a recorded conversation to possessing a "large quantity of narcotics" and discussed the operation of his drug trafficking organization." (Warrant at 8). Thus, based on his own admissions, it was reasonable to suspect that defendant was a drug dealer. It was also reasonable to suspect that the residences identified in the affidavit were homes to which defendant "own[ed] a key." Grossman, 400 F.3d at 218. Defendant listed 4752 Seahawk Square as his registered federal probation address. (Warrant at 6). As for 719 Melba Court, defendant was twice recorded at the location on a uniformed officer's body camera following domestic

violence calls. (Id. at 7). On the first occasion, defendant was waiting outside the apartment, but on the second occasion he answered the door. (Id.). Though defendant claimed not to live there at the time, investigation, including GPS tracking, revealed that he "routinely slept [there] over night" and "c[ame] and [went] freely" from the location. (Id.). In sum, it reasonably could be inferred from facts set forth in the affidavit that evidence of a crime would be found at the residences.

    c.  Staleness of Information

With regard to the GPS Orders, defendant argues that the facts provided by the confidential informant were stale as the affidavits fail to indicate when he last saw or purchased drugs from defendant. The reasoning provided in the M&R recommending defendant's identical argument in relation to the search warrant be rejected applies equally well to the GPS orders. (See M&R (DE 94) at 21 (noting facts in the warrant affidavit supporting the inference that defendant was involved in drug trafficking at the time of the warrant application, most of which are also included in the GPS affidavits). Where defendant did not identify any error in that recommendation, specific or otherwise, the court adopts it, and rejects defendant's objection.

    d.  Errors

Finally, defendant asserts that there are errors in the PRTT Order. In particular, the Order states that defendant was using the identified cell phone to "maintain his status as a fugitive from justice" when no such facts were stated in the application. (PRTT Order at 7). Further, while the application names Verizon as the subscriber, the Order indicates T-Mobile is the provider. (See, e.g., id. at 8).

"An erroneous description in the warrant does not necessarily invalidate a warrant and subsequent search . . . . [L]imitations on the execution of search warrants should be examined in

12

Case 7:20-cr-00131-FL   Document 101   Filed 04/18/22   Page 12 of 13

the light of the need to allow some latitude for honest mistakes[.]" United States v. Owens, 848 F.2d 462, 463-64 (4th Cir. 1988) (upholding search warrant with incorrect address "in light of the information available to the officers at the time they acted").

Here, where defendant has not asserted any way in which these errors "influence[d] the warrant's issuance, []or adversely affect[ed] its execution," the court denies defendant's objection. United States v. Qazah, 810 F.3d 879, 886 (4th Cir. 2015).[5]

## CONCLUSION

Based on the foregoing, defendant's motions to suppress (DE 83) is DENIED.

SO ORDERED, this the 18th day of April, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[5] In addition, defendant raises the following general, conclusory objections: 1) he is entitled to a Franks hearing as the stated facts in the warrant affidavit differ from the PRTT and GPS applications; 2) for the same reason, the good faith exception does not apply; and 3) the search warrant is overbroad in scope. (Obj. (DE 95) at I(e), II (h), III (c), and IV(b)); see M&R (DE 94) at 11 (in relation to 1) and 2)), explaining that "while [the affiant's] statement in the search warrant affidavit may have been more explicit about the February 29, 2020, controlled buy operation, that does not show that the statements in the PRTT and GPS affidavits were misleading, much less intentionally or recklessly so"). Upon careful review of the M&R and the record generally, the court finds no clear error in the magistrate judge's treatment of these issues, and adopts her recommendations as its own.